FILED

FEB 2 9 2008

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY          Deputy Clerk

ENTERED

FEB 2 9 2008

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY          Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re: | Case No. 6:07-17941-PC |
| NATIONAL R.V. HOLDINGS, INC., a Delaware corporation; and NATIONAL R.V., INC., a California corporation, | Chapter 11 |
| | Jointly Administered with Case No. 6:07-17937-PC |
| | Date: February 19, 2008<br>Time: 10:30 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom # 303<br>3420 Twelfth Street<br>Riverside, CA 92501 |
| Debtors. | |

**MEMORANDUM DECISION**

The Ad Hoc Committee of Equity Holders (the "Ad Hoc Committee")[1] seeks an order

directing the United States trustee to appoint an Official Committee of Equity Security Holders

pursuant to § 1102(a)(2) of the Code.[2] National R.V. Holdings, Inc. ("NRVH"), National R.V.,

Inc. ("NRV"), the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and

the United States trustee ("UST") oppose the request on the grounds that the appointment of such

a committee is not necessary to assure adequate representation of the equity security holders. At

the hearing, Ali M.M. Mojdehi appeared for the Ad Hoc Committee; Jonathan S. Shenson and

David M. Guess appeared for NRVH and NRV; Hamid R. Rafatjoo appeared for the Creditors'

Committee; and Timothy J. Farris appeared for the UST. The court, having considered the Ad

---

[1] The Ad Hoc Committee consists of Milfam II, L.P., Miller Irrevocable A-4, and Millennium Partners, LLC, Michael Cooney, and Barry A. Shaw, Jr., who collectively hold 19% of the common stock of National R.V. Holdings, Inc.

[2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse and Consumer Prevention Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), which make applicable certain Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

1  Hoc Committtee's motion and the opposition thereto, the evidentiary record, and arguments of

2  counsel, makes the following findings of fact and conclusions of law[3] pursuant to Fed. R. Civ. P.

3  52, as incorporated into Fed. R. Bankr. P. 7052 and made applicable to contested matters by Fed.

4  R. Bankr. P. 9014(c).

5                                  I. STATEMENT OF FACTS

6         On November 30, 2007, NRVH, a Delaware corporation, and NRV, a California

7  corporation, filed voluntary petitions for relief under chapter 11 of the Code. NRVH is a holding

8  company whose principal asset is 100% of the equity in NRV, the operating entity.  For

9  approximately 48 years prior to the filing of the petitions, NRVH and NRV (collectively, "the

10  Debtors") designed, manufactured, and marketed "Class A" gas and diesel recreational vehicles

11  ("RVs") at their facility in Perris, California, under various product names, including Dolphin,

12  Pacifica, Sea Breeze, Surf Side, Tradewinds, and Tropi-Cal.  At the time of bankruptcy, the

13  Debtors were the ninth largest manufacturer of "Class A" RVs in the country distributing 1,500

14  RVs annually through 75 dealer locations in the United States and Canada.  Shortly before the

15  petition date, the Debtors succumbed to a liquidity crisis which resulted in a 90% workforce

16  reduction and termination of continued operations. Debtors commenced the cases to preserve the

17  value of their remaining assets.  The cases have been jointly administered since December 12,

18  2007.

19         Debtors do not intend to reorganize. Their objective is to maximize the value of their

20  assets through an orderly and expeditious liquidation. Debtors believe that value for the benefit

21  of the estate can be derived from three sources: (1) the sale of inventory, both finished and

22  unfinished RVs, parts and replacements; (2) the collection of accounts receivable and the sale of

23  furniture, fixtures, and equipment ("FF&E"), intellectual property, and other assets; and (3) the

24  _____

25  [3] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby
   adopted as such.  To the extent that any conclusion of law is construed to be a finding of fact, it is
26  hereby adopted as such.  The court reserves the right to make additional findings and conclusions
   as necessary or as may be requested by any party.
27

1  | successful prosecution of the Kemlite Litigation.[4]

2  | On December 14, 2007, the UST appointed the Creditors' Committee in the NRV case

3  | pursuant to § 1102(a)(1).  No committee was appointed in the NRVH case.  By letter dated

4  | January 15, 2008, Mr. Mojdehi, on behalf of the Ad Hoc Committee, asked the UST to appoint

5  | an Official Committee of Equity Security Holders in the NRVH case reasoning that NRVH was

6  | solvent, the equity security holders were unique and unrepresented, and the cost of an equity

7  | security holders' committee would not be unduly burdensome.  On January 23, 2008, the

8  | Creditors' Committee advised the UST that it opposed the appointment of an equity security

9  | holders' committee primarily because the equity security holders were, in the Creditors'

10 | Committee's opinion, "out of the money."  After considering the Ad Hoc Committee's reply, the

11 | UST advised the Ad Hoc Committee , the Creditors' Committee, NRVH, and NRV on January

12 | 30, 2008, of his decision not to appoint an equity security holders' committee.[5]

13 |

14 | [4] On July 28, 2006, NRV filed a complaint against Crane Co. and Crane Composites, Inc., a/k/a

15 | Kemlite Company, Inc., seeking not less than $8 million in compensatory damages, plus punitive damages, attorneys fees and costs, for alleged breach of contract, breach of warranty,

16 | misrepresentation, and other causes of action in Case No. EDCV 06-00803 SGL PJWx, styled National R.V., Inc. v. Crane Co., et. al., in the United States District Court, Central District of

17 | California, Eastern Division (the "Kemlite Litigation").  Trial of the case commenced on January

18 | 15, 2008.

19 | [5] Peter C. Anderson, United States Trustee for Region 16, arrived at his decision in the following manner:

20 |

21 | In making my decision, I took into account into account the six factors set forth in Mr. Mojdehi's initial letter. I took into account that, at the present time, there is evidence

22 | that [NRVH] appears to be insolvent. I took into account that the interests of shareholders appear to be adequately represented at this time by four separate entities: the

23 | board of directors, who owe them a fiduciary duty; the insiders, especially those who are shareholders themselves, who owe equity a fiduciary duty as well; the Official Creditors'

24 | Committee, who has every reason to seek a maximum return on the assets of [NRV] as well as [NRVH]; and by the efforts of the Ad Hoc Committee itself. I determined that the

25 | case is not large or complex when compared to the reported cases in which equity security holders' committees have been previously appointed. Further, the cases involve a

26 | liquidation and prosecution of a lawsuit, not a reorganization. I considered that

27 |

1    On February 4, 2008, the Ad Hoc Committee moved for an order directing the immediate

2    appointment of an official equity security holders' committee in the NRVH case "to provide

3    equity holders with adequate representation in the chapter 11 process."[6]  The Ad Hoc

4    Committee's Motion was heard on shortened notice and opposed by the Debtors,[7] Creditors'

5    Committee, and UST.  After a hearing on February 19, 2008, the matter was taken under

6    submission.

7                                    II. DISCUSSION

8        This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and

9    1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is

10   appropriate in this court.  28 U.S.C. § 1409(a).

11       Section 1102(a)(1) directs the UST to appoint an unsecured creditors' committee as soon

12   as practicable after entry of the order for relief in a chapter 11 case, and authorizes the UST in its

13   _____

14        [NRVH]'s stock is not widely held as there are only "well over 100" shareholders, not the
15        thousands and tens of thousands of holders in those reported cases in which an equity
         security holders' committee has been appointed, and almost half of the shares are reported
16        to be owned by approximately six holders.  I received no information as to how actively
         the shares are traded.  I concluded that it was at least premature to consider the
17        appointment of an equity security holders' committee in [NRVH] at this time, as given
         the present status of the case, equity is "still out of the money."  I concluded that the cost
18        and delay associated with the appointment of an equity security holders' committee
         outweighed the cost of exclusive representation for equity security holders.  For all of the
19        foregoing reasons, I decided not to appoint an equity security holders' committee at this
20        time.

21   Declaration of United States Trustee, Peter C. Anderson in support of United States Trustee's
22   Opposition to Motion of Ad Hoc Committee for Appointment of Official Committee of Equity
     Security Holders, p.16, l.15 to p.17, l.6.
23

24   [6] Motion of Ad Hoc Committee of Equity Holders for Appointment of Official Committee of
     Equity Holders ("Motion"), p.13, l.18-19.
25

     [7] Debtors requested that the Ad Hoc Committee's Motion be continued for 30 days insisting that
26   the critical question of whether equity was "in the money" hinged upon the outcome of the
     Kemlite Litigation.
27

                                       - 4 -

1   discretion to "appoint additional committees of creditors or of equity security holders as [it]

2   deems appropriate."[8]  If the UST does not appoint a committee of equity security holders, the

3   court, on the request of a party in interest, may exercise its discretion to order the appointment of

4   an equity security holders' committee, but only if the appointment of such a committee is

5   "necessary to assure adequate representation . . . of equity security holders" under the facts and

6   circumstances of the case.[9]  The UST insists that its discretionary decision not to appoint an

7   equity security holders' committee in the NRVH case must be reviewed under an abuse of

8   discretion standard.  The court disagrees.

9        Section 1102(a)(2) states plainly that "the court may order the appointment of additional

10  committees . . . if necessary to assure adequate representation" without reference to a standard of

11  review applicable to any prior decision by the United States trustee.  See In re Enron Corp., 279

12  B.R. 671, 685 (Bankr. S.D.N.Y. 2003) aff'd sub nom. Mirant Americas Energy Mktg, L.P. v.

13  Official Comm. of Unsecured Creditors of Enron Corp., 2003 WL 22327118 (S.D.N.Y. Oct. 10,

14  2003) ("There is no indication, upon review of the plain language of the statute, that the court is

15  constrained in making such a determination."); In re McLean Indus., Inc., 70 B.R. 852, 857-58

16

17  [8] Section 1102(a)(1) states:

18      Except as provided in paragraph (3), as soon as practicable after the order for relief under
19      chapter 11 of this title, the United States trustee shall appoint a committee of creditors
        holding unsecured claims and may appoint additional committees of creditors or of equity
20      security holders as the United States trustee deems appropriate.

21  11 U.S.C. § 1102(a)(1) (emphasis added).

22  [9] Section 1102(a)(2) provides:

23
24      On request of a party in interest, the court may order the appointment of additional
        committees of creditors or of equity security holders if necessary to assure adequate
25      representation of creditors or of equity security holders.  The United States trustee shall
        appoint any such committee.

26
27  11 U.S.C. § 1102(a)(2) (emphasis added).

1  (Bankr. S.D.N.Y. 1987) ("Congress sought primarily to take bankruptcy judges out of the

2  appointment process and Congress expressly retained in the bankruptcy courts the ability to

3  decide de novo the question of whether additional committees are necessary to assure adequate

4  representation."). As the court explained in In re Texaco, Inc.,

5          The issue of adequate representation is one which is ultimately entrusted to the
        courts to decide upon an application made by a party in interest. This issue is determined
6        on a de novo basis after the administrative task of appointing committees is performed by
        the United States Trustee. An abuse of discretion standard does not apply with respect to
7        the United States Trustee's initial exercise of discretion because the concept of adequate
        representation is a legal issue which must be resolved judicially. Hence, the court's
8        determination as to the adequacy of representation within the meaning of 11 U.S.C. §
        1102(a)(2) is not an administrative review because this decision is committed to the court
9        on a de novo basis. There is no requirement under 11 U.S.C. § 1102(a)(2) that an
        interested party must first submit such a request to the United States Trustee. Therefore,
10       whether or not such a request was first submitted to the United States Trustee, the court
        must arrive at its own judgment, although the court may consider reasons advanced by the
11       United States Trustee in the event that such a request was previously submitted to the
        United States Trustee.

12  79 B.R. 560, 566 (Bankr. S.D.N.Y. 1987). Therefore, the court will review the UST's decision

13

14  not to appoint an official equity security holders' committee in the NRVH case, as requested by

    the Ad Hoc Committee, de novo.
15

16      The appointment of an additional committee is an extraordinary remedy. In re Dana

17  Corp., 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006); In re Winn-Dixie Stores, Inc., 326 B.R. 853, 857

18  (Bankr. M.D. Fla. 2005); Enron Corp., 279 B.R. at 685. The party moving for an order directing

19  the appointment of an additional committee has the burden of establishing that it is not

20  adequately represented.[10] Dana Corp., 344 B.R. at 38; Winn-Dixie, 326 B.R. at 857; Enron

21  _____

22  [10] The Ad Hoc Committee's Motion is not supported by a declaration or other evidence. The Ad
    Hoc Committee simply requests that the court "take judicial notice of all matters of public record
23  in the Debtors' above-captioned chapter 11 cases, including the Debtors' schedules and statement
    of financial affairs." Motion, p.2, n.2. A court has discretion to take judicial notice of
24  adjudicative facts, but judicial notice is mandatory "if requested by a party and supplied with the
    necessary information." Fed. R. Evid. 201(c) & (d). In this case, the Ad Hoc Committee did not
25  supply the necessary information in conjunction with its request for judicial notice. Furthermore,
    the court notes that, as of the date of the hearing, there were 54 docket entries in the NRV case
26  and 258 docket entries in the NRVH case. The Debtors' schedules and statements alone exceed

27

1    Corp., 279 B.R. at 685.

2         "Adequate representation" is not defined by the Code.  Winn-Dixie, 326 B.R. at 857; In

3    re Leap Wireless Int'l, Inc., 295 B.R. 135, 137 (Bankr. S.D. Cal 2003); In re Williams

4    Commc'ns Group, Inc., 281 B.R. 216, 220 (Bankr. S.D.N.Y. 2002).  Courts addressing the issue

5    of adequate representation generally consider the following non-exclusive factors: (1) the number

6    of shareholders; (2) the complexity of the case; and (3) whether the cost of the additional

7    committee significantly outweighs the concern for adequate representation.  Leap Wireless, 295

8    B.R. at 137; Williams Commc'ns, 281 B.R. at 220; In re Wang Laboratories, Inc., 149 B.R. 1, 2

9    (Bankr. D. Mass. 1992).  Other factors that may be considered by the court in determining

10    adequacy of representation include:

11         1.        Whether the shares are widely held and publicly traded;

12         2.        The size and complexity of the chapter 11 case;

13         3.        The delay and additional cost that would result if the court grants the motion;

14         4.        The likelihood of whether the debtors are insolvent;

15         5.        The timing of the motion relative to the status of the chapter 11 case; and

16         6.        Other factors relevant to the adequate representation issue.

17    Matter of Kalvar Microfilm, Inc., 195 B.R. 599, 600 (Bankr. D. Del. 1996).  "No one factor is

18    dispositive, and the amount of weight that the court should place on each factor may depend on

19    the circumstances of the particular Chapter 11 case."  Id. at 600-601; see Dana Corp., 344 B.R. at

20    38.  In the final analysis, a court's decision to order the appointment of an equity security

21    holders' committee is discretionary and turns on the facts of each case.  See Dana Corp., 344

22

23    _____

24    2,700 pages.  NRVH's schedules and statement of financial affairs are 193 pages in length, and
      NRV's schedules and statement of financial affairs total 2,549 pages.  "While the court may, in
25    its discretion, take judicial notice of matters of public record, it is not the responsibility of the
      court to scour the record to make a party's case for it."  Krol v. North Shore Holdings, Ltd. (In re
26    Sorci), 315 B.R. 723, 728 (Bankr. N.D. Ill. 2004).  Therefore, the Ad Hoc Committee's request
      for judicial notice is denied.
27

1  B.R. at 38; <u>Williams Commc'ns</u>, 281 B.R. at 220; <u>Wang Laboratories</u>, 149 B.R. at 2.

2      The following factors are relevant to the court's analysis in this case: (1) the likelihood of

3  whether the Debtors are insolvent; (2) the size and complexity of the cases; (3) whether the

4  shares are widely held and publicly traded; (4) whether the cost of the additional committee

5  significantly outweighs the concern for adequate representation; and (5) other factors relevant to

6  adequate representation.

7      <u>There is a Likelihood that the Debtors are Insolvent</u>.

8      The principal issue on any motion for the appointment of an equity security holders'

9  committee is whether the debtor is solvent or it appears likely that there will be a substantial

10  return for equity.  <u>See</u> <u>Williams Commc'ns</u>, 281 B.R. at 223 ("Such committees should not be

11  appointed unless equity holders establish that (i) there is a substantial likelihood that they will

12  receive a meaningful distribution in the case under a strict application of the absolute priority

13  rule, and (ii) they are unable to represent their interests in the bankruptcy case without an official

14  committee"); <u>In re Emons Indus., Inc.</u>, 50 B.R. 692, 694 (Bankr. S.D.N.Y. 1985) (opining that

15  "no equity committee should be appointed when it appears that a debtor is hopelessly insolvent

16  because neither the debtor nor the creditors should have to bear the expense of negotiating over

17  the terms of what is in essence a gift") .

18      The Ad Hoc Committee asserts that NRVH's schedules alone indicate equity of at least

19  $42 million and therefore, a substantial likelihood of a meaningful distribution to equity security

20  holders in the case.  In its schedules filed on January 14, 2008, NRVH disclosed personal

21  property valued at $53,876,748[11] and debts totaling $10,397,395.  However, the schedules do not

22  tell the whole story.  NRVH's schedules do not accurately identify NRVH's assets or the fair

23  market value of its assets.  First, the information contained in NRVH's schedules appears to have

24  _____

25  [11] This valuation includes an "Intercompany Receivable from National R.V., Inc." in the amount
of $45,101,873 (the "Inter-company Claim"), but does not include either NRVH's contingent and

26  unliquidated claim made the basis of the Kemlite Litigation or NRVH's patents and trademarks
which were each listed in Schedule B as having an "unknown" value.

27

1    been drawn from a <u>consolidated</u> balance sheet dated September 30, 2007, which commingled the

2    assets and liabilities of NRV and NRVH.  Second, NRVH revealed in paragraph 3(a) of a

3    statement preceding the schedules entitled "Global Notes and Statement of Limitations,

4    Methodology, and Disclaimer Regarding Debtors' Schedules and Statements" that the property

5    identified in the schedules was valued at "book value" or NRVH's cost basis for the assets, not

6    market value.[12]  Finally, NRVH's schedules do not accurately reflect the prepetition claims that

7    may ultimately be allowed against NRVH's assets.  For example,  Schedule E disclosed 15

8    holders of unsecured priority tax claims totaling $6,185, but identifies another 89 holders of

9    contingent, unliquidated, and disputed unsecured priority tax claims of an unknown amount.

10   Schedule F lists 12 holders of unsecured nonpriority claims totaling $747,635, but an additional

11   20 holders of contingent, unliquidated, and disputed unsecured nonpriority claims are scheduled

12   in an unknown amount.  The deadline to file proofs of claim does not expire until May 28, 2008.

13          At this time, there is no evidence that Debtors' collection of accounts receivable and

14   liquidation of its inventory, FF&E, intellectual property, and other assets will put the equity

15   security holders "in the money."  Since the commencement of the case, the Debtors have worked

16   closely with the Creditors Committee to liquidate the assets of the estate expeditiously but in a

17   manner that maximizes value for the estate.  A substantial portion of the Debtors' accounts

18   receivable were collected prior to the creditors' meeting and used to pay secured creditors and

19   operating expenses.  Debtors sold their South Coast Reactive Organic Gas Emission Reduction

20   Credits for approximately $1.6 million.  Nearly $14.5 million is expected from the sale of the

21   Debtors' finished and built-out RVs, but the estate may net only $2.6 million due to claims

22   secured by the RVs and costs associated with the sales.  Over $2.4 million of the sale proceeds

23   will be used to reduce the secured claim of Wells Fargo Bank, N.A. and another $8.0 million

24   must be set aside to satisfy claims of chassis vendors pending further order of the court.

25   _____

26   [12] NRVH included a footnote to the total asset value disclosed on the Summary of Schedules
     which states: "This amount does not include the items where no book value has been liquidated."
27

1  Furthermore, the estate has incurred administrative expenses in conjunction with the sale,

2  including nearly $1.0 million for labor and materials to complete the build-out of at least 61 RVs.

3  With respect to the FF&E and raw materials, the Creditors' Committee reports that the highest

4  minimum guaranteed bid secured by the Debtors for the sale of the assets was only $1.6 million.

5  　　　　On the expense side, the Debtors estimate at least $7 million in administrative claims.

6  And there are a number of unresolved issues. On December 12, 2007, a class action was

7  commenced in Adversary No. 07-01305, styled Henry Caouette v. National R.V. Holdings, Inc.,

8  et. al., in the United States Bankruptcy Court, Central District of California, Riverside Division,

9  for recovery of damages by Henry Caouette and other similarly situated employees of the Debtors

10  in the amount of 60 days' pay and ERISA benefits for alleged violation of the Worker

11  Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101, et. seq., and California Labor

12  Code §§ 1400, et. seq. (the "WARN Act Litigation"). The Creditors' Committee estimates that

13  the Debtors' potential liability in the WARN Act Litigation is $4 million. Reclamation claims

14  must be resolved and the claims of the chassis vendors must be adjudicated. The Debtors also

15  face a continuing administrative claim for rent in excess of $258,500 per month if they are unable

16  to exit their leased space in Perris, California, by April 30, 2008.

17  　　　　At the time of submission, the issue of whether equity was "in the money" boiled down to

18  whether (and to what extent) the Debtors would be successful in the Kemlite Litigation. On

19  February 26, 2008, the jury returned a verdict in favor of the Debtors for $3.5 million in damages

20  - $21.5 million short of the amount sought by the Debtors. Even assuming the verdict is reduced

21  to judgment and paid in full, equity security holders will not be "in the money" given the slim

22  recovery and the contingent fees and costs payable to Debtors' special litigation counsel,

23  O'Melveny & Myers LLP. Based on the foregoing, there is a substantial likelihood that the

24  Debtors are insolvent and that equity security holders will not receive a meaningful distribution

25  in the NRVH case.

26

27
　　　　　　　　　　　　　　　　　　- 10 -

1      <u>Debtors' Cases are Not Large or Complex</u>.

2           The jointly administered cases are not large or complex, nor are the interests of creditors

3      and equity security holders so conflicting as to require the appointment of an equity security

4      holders' committee to assure adequate representation.  See <u>Williams Commc'ns</u>, 281 B.R. at 222

5      (concluding that "the Creditors' Committee has sufficiently aligned or parallel interests with the

6      Shareholders to preclude the need for an additional committee").  The cases are focused on the

7      expeditious liquidation of assets.  Since the commencement of the case, the Debtors have taken

8      action to collect accounts receivable, sell emission credits, and liquidate the inventory of RVs

9      and replacement parts.  The sale of substantially all of the Debtors' remaining RVs should be

10     completed in approximately 45 days.  Debtors intend to sell the FF&E, excess raw materials, and

11     intellectual property through a liquidator within the next 60 days.  The Kemlite Litigation should

12     conclude shortly in view of the $3.5 million verdict in favor of the Debtors.  Once the auction is

13     completed, the attention will turn to claims adjudication and a plan for distribution on account of

14     allowed claims.  Equity security holders may receive a distribution if, and only if, funds remain

15     after the payment of administrative expenses and allowed claims.

16          <u>NRVH's Shares are Publicly Traded, But Not Widely Held</u>.

17          NRVH may be a publicly traded company, but it has traded over the counter in the Pink

18     Sheet market since its withdrawal from the OTC Bulletin Board.  The Ad Hoc Committee did not

19     provide any evidence establishing that NRVH's shares are actively traded.  Nor does it appear

20     that NRVH stock is widely held.  There may be "well over 100" equity holders in NRVH, but it

21     is undisputed that 50% of the 10,339,484 outstanding shares of common stock in the company

22     are held by 6 individuals or entities. "Not every case with public shareholders warrants an equity

23     committee." <u>Emons Indus.</u>, 50 B.R. at 694.

24          <u>Whether the Cost of an Equity Security Holders' Committee Significantly Outweighs the</u>

25     <u>Concern for Adequate Representation</u>.

26          The Ad Hoc Committee concedes that the court must balance the potential value of an

27

1  equity security holders' committee's representation against the administrative costs associated

2  with appointment of the committee.[13]  Wang, 149 B.R. at 3 (stating that the "equation requires a

3  balancing of the cost of the additional committee against the value of the representation to be

4  provided"); In re Beker Indus. Corp., 55 B.R. 945, 949 (Bankr. S.D.N.Y. 1985) (observing that

5  "the appointment of additional committees is 'closely followed by applications to retain attorneys

6  and accountants.'" (citation omitted)).  Having determined that the equity security holders will

7  not be "in the money" and thereby receive a meaningful distribution, this factor weighs heavily

8  against the appointment of an official committee of equity security holders in the NRVH case.

9          Other Factors Relevant to Adequate Representation.

10         The Ad Hoc Committee maintains that Debtors' executive officers and directors have

11  little incentive to adequately represent the interests of equity security holders given the fact that

12  collectively they hold not more than 3% of NRVH's common stock.  However, this argument

13  ignores the fiduciary obligations of NRVH and NRV, as debtors in possession, to both creditors

14  and equity security holders.

15         When the debtor is a corporation, the debtor in possession's fiduciary obligations to the

16  corporation, its creditors and shareholders, fall upon the officers and directors.  See Commodity

17  Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985) (stating that "the debtor's

18  directors bear essentially the same fiduciary obligation to creditors and shareholders as would the

19  trustee for a debtor out of possession"); Holta v. Zerbetz (In re Anchorage Nautical Tours, Inc.),

20  145 B.R. 637, 643 (9th Cir. BAP 1992) ("When the debtor is a corporation, corporate officers

21  and directors are considered to be fiduciaries both to the corporate debtor in possession and to the

22  creditors.").

23         Corporate officers, as fiduciaries, must protect and preserve estate assets held in trust for

24  the benefit of creditors.  Holta, 145 B.R. at 643; Hirsch v. Penn. Textile Corp. (In re Centennial

25  Textiles, Inc.), 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998) ("As fiduciaries, the debtor in

26

_____

[13] Motion, p.12, l.28 to p.13, l.2.

27

- 12 -

possession and its managers are obligated to treat all parties to the case fairly, maximize the

value of the estate, and protect and conserve the debtor's property" (internal citations omitted)).

In this regard, the Ninth Circuit holds the debtor in possession's corporate officers to the

standards of "officers of the court because of their responsibility to act in the best interests of the

estate as a whole and the accompanying fiduciary duties." Gumport v. China Int'l Trust & Inv.

Corp. (In re Intermagnetics Am., Inc.), 926 F.2d 912, 917 (9th Cir. 1991); see York Int'l

Building, Inc. v. Chaney (In re York Int'l Building, Inc.), 527 F.2d 1061, 1068 (9th Cir. 1975)

(noting that special masters administering bankruptcy estates "are not acting as private persons,

but as officers of the court").

The Ad Hoc Committee has the burden to demonstrate the need for adequate

representation and there are no facts to suggest that management is not aligned with non-insider

equity security holders. The Ad Hoc Committee has not presented any evidence that the

Debtors' officers or directors have either breached their fiduciary duties to the equity security

holders or are incapable of properly discharging their fiduciary duties in these jointly

administered cases.

Nor is there evidence to support the Ad Hoc Committee's further contention that the

Creditors Committee is bent on disallowing NRVH's Inter-company Claim for the sole purpose

of maximizing distributions to the holders of other unsecured nonpriority claims of NRV. The

Creditors Committee was appointed by the UST to represent the interests of NRV's unsecured

creditors. NRVH is an unsecured creditor of NRV by virtue of the Inter-company Claim. The

Creditors' Committee and its members have a fiduciary duty to all creditors represented by the

committee, including NRVH. In re Barney's, Inc., 197 B.R. 431, 442 (Bankr. S.D.N.Y. 1996);

see Bohack Corp. v. Gulf & Western Indus., Inc., 607 F.2d 258, 262 n.4 (2d Cir. 1979) (stating

that a "committee owes a fiduciary duty to the creditors, and must guide its actions so as to

safeguard as much as possible the rights of minority as well as majority creditors"). While the

committee may be motivated to investigate the inter-company transaction between NRVH and

- 13 -

1    NRV, there is no evidence that the Creditors' Committee is unable to properly discharge its

2    fiduciary obligations to all of NRV's unsecured creditors, including NRVH, or that the Creditors'

3    Committee has an irreconcilable conflict of interest necessitating the formation of an equity

4    security holders' committee in NRVH for the sole purpose of protecting NRVH's general

5    unsecured claim in the NRV case.

6                                    III.  CONCLUSION

7           In summary, the court finds that the appointment of an official committee under §

8    1102(a)(2) is not necessary at this time to assure adequate representation of NRVH's equity

9    security holders under the specific facts of this case and therefore, the Ad Hoc Committee's

10   Motion should be denied.  The Ad Hoc Committee is not without recourse.  The Ad Hoc

11   Committee may continue to appear and be heard on any issue in the case. 11 U.S.C. § 1109(b).

12   If the court determines that its work results in a substantial contribution to the estate, the Ad Hoc

13   Committee's actual, necessary expenses may be reimbursed under § 503(b)(3)(D).  11 U.S.C. §

14   503(b)(3)(D); see Leap Wireless, 295 B.R. at 140; Williams Commc'n, 281 B.R. at 223-24.

15          A separate order will be entered consistent with this opinion.

16   Dated: February 29, 2008

17                                    PETER H. CARROLL
                                      United States Bankruptcy Judge

18

19

20

21

22

23

24

25

26

27

                                          - 14 -

**NOTE TO USERS OF THIS FORM:**

*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do not file this form as a separate document.*

| | |
|---|---|
| In re NATIONAL R.V. HOLDINGS, INC., | CHAPTER 11 |
| Debtor. | CASE NUMBER RS 07-17941 PC |

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1.    You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify)*: MEMORANDUM DECISION

was entered on *(specify date)*:      FEB 2 9 2008

2.    I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date)*:

FEB 2 9 2008

Dated:      FEB 2 9 2008

JON D. CERETTO
**Clerk of the Bankruptcy Court**

By: _____

*Deputy Clerk*

*Rev. 1/01* This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9021-1.1**

Service List

National R.V. Holdings, Inc.
3411 N. Perris Blvd.
Perris, CA 92571


Jonathan S. Shenson, Esq.
David M. Guess, Esq.
Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067


Timothy Farris, Esq.
United States Trustee
3685 Main Street, Ste. 300
Riverside, CA 92501


Hamid R. Rafatjoo, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA 90067-4100


Ali M.M. Mojdehi, Esq.
Baker & McKenzie, LLP
12544 High Bluff Drive, Third Floor
San Diego, CA 92130-3051