FILED
APR 25 2008
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

ENTERED
APR 28 2008
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY          Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re: | Case No. 6:07-17941-PC |
| NATIONAL R.V. HOLDINGS, INC., a Delaware corporation; and NATIONAL R.V., INC., a California corporation, | Chapter 11<br><br>Jointly Administered with Case No. 6:07-17937-PC<br><br>Date: April 21, 2008<br>Time: 9:30 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom # 303<br>3420 Twelfth Street<br>Riverside, CA 92501 |
| Debtors. | |

## MEMORANDUM DECISION

The Ad Hoc Committee of Equity Holders (the "Ad Hoc Committee")[1] seeks reconsideration of an Order Denying Motion of Ad Hoc Committee of Equity Holders for Appointment of Official Committee of Equity Holders ("Order") entered on February 29, 2008. National R.V. Holdings, Inc. ("NRVH"), National R.V., Inc. ("NRV"), the Official Committee of Unsecured Creditors of NRV (the "Creditors' Committee"), and the United States trustee ("UST") oppose the Ad Hoc Committee's motion for reconsideration. At the hearing, Christine E. Baur appeared for the Ad Hoc Committee; Jonathan S. Shenson appeared for NRVH and NRV (collectively, the "Debtors"); Hamid R. Rafatjoo appeared for the Creditors' Committee; and Timothy J. Farris appeared for the UST. The court, having considered the Ad Hoc Committee's motion and the opposition thereto, the evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law[2] pursuant to Fed. R. Civ. P.

---

[1] The Ad Hoc Committee consists of Milfam II, L.P., Miller Irrevocable A-4, Millennium Partners, LLC, Michael Cooney, and Barry A. Shaw, Jr., who collectively hold 19% of the common stock of National R.V. Holdings, Inc.

[2] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it

52, as incorporated into Fed. R. Bankr. P. 7052 and made applicable to contested matters by Fed. R. Bankr. P. 9014(c).

## I. STATEMENT OF FACTS

On February 4, 2008, the Ad Hoc Committee moved for an order directing the immediate appointment of an official committee of equity security holders in the NRVH case pursuant to § 1102(b) of the Code.[3] The Ad Hoc Committee's motion was heard on shortened notice and opposed by the Debtors,[4] Creditors' Committee, and UST. After a hearing on February 19, 2008, the matter was taken under submission. On February 29, 2008, the Order was entered denying the Ad Hoc Committee's motion. The court's findings of fact and conclusions of law forming the basis for the Order were set forth in a separate Memorandum Decision dated February 29, 2008 ("Memorandum Decision").

On March 10, 2008, the Ad Hoc Committee timely filed its Motion for Reconsideration of Order Denying Appointment of Official Committee of Equity Holders ("Reconsideration Motion"), together with the following documents:

1. Declaration of Michael M. Ozawa in Support of Motion for Reconsideration of Order Denying Motion for Reconsideration of [sic] Order Denying Appointment of Official Committee of Equity Holders ("Ozawa Declaration");

2. Declaration of Joseph R. Dunn in Support of Motion for Reconsideration of Order Denying Motion for Reconsideration of [sic] Order Denying Appointment of Official Committee of Equity Holders ("Dunn Declaration");

---

is hereby adopted as such.

[3] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse and Consumer Prevention Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), which make applicable certain Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

[4] Debtors requested that the Ad Hoc Committee's motion be continued for 30 days insisting that the critical question of whether equity was "in the money" hinged upon the outcome of Case No. EDCV 06-00803 SGL PJWx, styled National R.V., Inc. v. Crane Co., et. al., in the United States District Court, Central District of California, Eastern Division (the "Kemlite Litigation").

3. Declaration of Ali M. M. Mojdehi in Support of Motion for Reconsideration of Order Denying Motion for Reconsideration of [sic] Order Denying Appointment of Official Committee of Equity Holders (Mojdehi Declaration"); and

4. Request for Judicial Notice in Support of Motion of Ad Hoc Committee of Equity Holders for Reconsideration of Order Denying Appointment of Official Committee of Equity Holders ("Request for Judicial Notice").

Written opposition to the Ad Hoc Committee's Reconsideration Motion was filed by the Debtors,[5] the Creditors' Committee, and the UST, to which the Ad Hoc Committee timely replied. After a hearing on April 21, 2008, the matter was taken under submission.

## II. DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

Rule 9023 makes Rule 59(e) of the Federal Rules of Civil Procedure applicable in bankruptcy cases. Fed. R. Bankr. P. 9023. Rule 59(e) authorizes the filing of a motion to alter or amend a judgment not later than 10 days after entry of the judgment. Fed. R. Civ. P. 59(e). Reconsideration is "an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted); Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). In the Ninth Circuit, "'a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" Kona Enters., 229 F.3d at 890 (quoting 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999)). Reconsideration may also be granted "as necessary to prevent manifest

---

[5] In a statement filed in response to the Reconsideration Motion, the Debtors did not request specifically that the Ad Hoc Committee's motion for reconsideration be denied; but instead described actions taken which, in the Debtors' view, would "obviate any purported need for an official committee of equity holders in the case of NRVH . . . ." Statement Re Motion for Reconsideration of Order Denying the Appointment of Official Committee of Equity Holders, p.4, l.2-3.

-3-

injustice." Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

A.    The Court Applied the Proper Legal Standard.

The Ad Hoc Committee asserts that reconsideration is warranted because the court erred in failing to make "the requisite finding . . . [that NRVH] – as a standalone entity – appears to be 'hopelessly insolvent.'"[6] The Ad Hoc Committee concedes that that "adequate representation" must be divined by weighing a variety of factors, but cites Exide Techs. v. Wis. Inv. Bd.[7] for the proposition that the court may not consider any factor absent a threshold finding that the debtor is "hopelessly insolvent." Nothing could be further from the truth.

Citing Matter of Kalvar Microfilm, Inc.,[8] the court in Exide Techs observed only that "the appointment of an official equity committee is generally regarded as unjustified" if a debtor appears to be "hopelessly insolvent." Exide Techs, 2002 U.S. Dist. LEXIS 27210, at *4. Kalvar Microfilm itself points out that "[t]he likelihood of whether the debtor is insolvent" is simply one factor to be considered in determining whether equity security holders are adequately protected. 195 B.R. at 600. As this court noted in its Memorandum Decision, the debtor's solvency may be the principal issue on any motion for the appointment of an equity security holders' committee. See Williams Commc'ns Group, Inc., 281 B.R. 216, 220 (Bankr. S.D.N.Y. 2002) (stating that "the debtor's solvency is a major factor when considering the cost of appointing an equity committee"). However, it is neither the threshold or dispositive issue. As the court correctly observed in In re Leap Wireless Int'l, Inc.:

> "The most frequent cited factors considered by courts in making this determination are: number of shareholders; complexity of the case, and whether the cost of the additional committee significantly outweighs the concern for adequate representation. Other factors which may influence this decision include the delay associated with the appointment of a

---

[6] Reconsideration Motion, p.5, l.6-7.

[7] 2002 U.S. Dist. LEXIS 27210 (D. Del. Dec. 23, 2002).

[8] 195 B.R. 599 (Bankr. D. Del. 1996).

- 4 -

committee, the timing of the motion relative to the status of the chapter 11 case and whether the debtor is likely 'hopelessly insolvent.'"

295 B.R. 135, 137 (Bankr. S.D. Cal. 2003) (citations omitted). Even if the court was to find that NRVH was solvent based upon the information contained in its schedules, that fact alone is only one factor to be considered by the court in exercising its discretion to appoint an equity security holders' committee. See Kalvar Microfilm, 195 B.R. at 600-01. "No one factor is dispositive, and the amount of weight that the court should place on each factor may depend on the circumstances of the particular Chapter 11 case." Id.; see In re Dana Corp., 344 B.R. 35, 39 (Bankr. S.D.N.Y. 2006).

In its Memorandum Decision, the court found that "there is a substantial likelihood that the Debtors [NRV and NRVH] are insolvent and that equity holders will not receive a meaningful distribution in the NRVH case."[9] The Ad Hoc Committee seeks reconsideration on the further ground that court applied an improper legal standard with respect to the solvency issue, claiming that "[t]he 'substantial likelihood' standard established in Williams Communication Group, Inc., 281 B.R. 216 (Bankr. S.D.N.Y. 2002) itself appears to be a minority standard that was unsupported by the prior case law it relied upon . . ." and that its burden at the hearing was simply to establish "whether there is apparent solvency."[10]

The Ad Hoc Committee relied on the Williams Communication case both in its motion for the appointment of an official equity security holders' committee and in oral argument at the hearing on the motion. "A Rule 59(e) motion may **not** be used to raise arguments or present evidence for the first whey they could reasonably have been raised earlier in the litigation." Kona Enters., 229 F.3d at 890 (emphasis in original); see Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990) (Reconsideration should not be used to "argue new facts or issues that inexcusably were not presented to the court in the matter previously decided").

---

[9] Memorandum Decision, p.10, l.23-25.

[10] Reconsideration Motion, p.8, l.10-14; 25.

B.   <u>The Court's Factual Findings Were Not Clearly Erroneous Based upon the Evidence Presented and the Court Will Not Consider the New Evidence.</u>

The court did not find that the Debtors were insolvent on a <u>consolidated</u> basis, as alleged by the Ad Hoc Committee. As previously noted, the court found, based on the evidence presented, that "there is a substantial likelihood that the Debtors [NRV and NRVH] are insolvent and that equity holders will not receive a meaningful distribution in the NRVH case."[11]

The appointment of an additional committee is an extraordinary remedy which is left to the discretion of the court. Dana Corp., 344 B.R. at 38; In re Winn-Dixie Stores, Inc., 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005); In re Enron Corp., 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002). Indeed, "[t]he appointment of official equity committees should be the rare exception." Williams Commc'ns, 281 B.R. at 223. The Ad Hoc Committee seems to dismiss the fact that it had the burden of proof at the hearing on February 19, 2008. It was the Ad Hoc Committee's burden under § 1102(a)(2) to establish that the appointment of an equity security holders' committee was necessary to assure adequate representation in the NRVH case. See Dana Corp., 344 B.R. at 38; Winn-Dixie, 326 B.R. at 857; Enron Corp., 279 B.R. at 685. The Ad Hoc Committee's motion was premised on the notion that the equity holders of NRVH were "in the money" based solely upon the information contained in NRVH's schedules without attributing any value to the Kemlite Litigation. However, the Ad Hoc Committee's motion was not supported by a declaration or other evidence[12] and its request for judicial notice was denied.[13]

---

[11] Memorandum Decision, p.10, l.23-25.

[12] LBR 9013-1(a)(13) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California states, in pertinent part, that the "[f]actual contentions involved in any motion or opposition to a motion shall be presented, heard, and determined upon declarations and other written evidence."

[13] Memorandum Decision, p.6, n.10. Notwithstanding denial of its request for judicial notice under Rule 201 of the Federal Rules of Evidence, the court did exercise its discretion to take judicial notice of the Debtors' respective schedules in light of the Ad Hoc Committee's contention that NRVH was solvent based solely on the information contained in the schedules.

-6-

On reconsideration, the Ad Hoc Committee argues that it "should not be punished for being forced to rely on the Debtors' own Schedules" which it now characterizes as "in gross disarray" and "woefully inaccurate and incomplete."[14] The Ad Hoc Committee asks the court to consider the Mojdehi Declaration,[15] the Ozawa Declaration,[16] and the Dunn Declaration,[17]

---

[14] Reconsideration Motion, p.9, l.20-25.

[15] The court sustains the Creditors Committee's objection to the Modjehi Declaration with respect to paragraphs 3-9 of the declaration and Exhibits A through H attached thereto. Paragraphs 3-9 are not relevant in that the evidence set forth therein, together with Exhibits A through H, referred to therein, is not newly discovered evidence. All of the facts referenced in paragraphs 3-9, together with Exhibits A through H attached to the declaration, occurred after the court's ruling on February 29, 2008. The court overrules the Creditors' Committee's objection with respect to paragraphs 1-2 and 10-12 of the Mojdehi Declaration, as well as Exhibit I attached thereto.

[16] The court sustains the Creditors Committee's objection to the Ozawa Declaration on the grounds of relevance. Mr. Ozawa purports to give expert testimony concerning the solvency of NRVH. Mr. Ozawa's testimony would have been relevant at the hearing on the original motion. However, there is no showing that Mr. Ozawa's testimony is newly discovered or that it could not have been procured with reasonable diligence and timely submitted in conjunction with the original motion filed on February 4, 2008. Secondly, Mr. Ozawa's expert opinion will not assist the court in understanding the evidence or determining a fact in issue with respect to the matter before the court. According to the reply, Mr. Ozawa's testimony is offered by the Ad Hoc Committee "in response to the ex parte statements of counsel for the Operating Committee at the Status Conference, while the Original Motion was under submission, that equity is not 'in the money.'" Reply of the Ad Hoc Committee of Equity Holders to the Official Committee of Unsecured Creditors' Evidentiary Objections to Evidence Submitted in Support of Motion for Reconsideration of Order Denying Appointment of Official Committee of Equity Holders, p.5, l.1-4.

Mr. Ozawa's testimony is not helpful to the court in determining whether the Debtors and Creditors Committee improperly submitted additional evidence and argument at the status conference on February 29, 2008, regarding the Ad Hoc Committee's original motion while it was under submission, and if so, whether such conduct resulted in manifest injustice, as alleged by the Ad Hoc Committee. Even if the Ad Hoc Committee were to offer, and the court was to consider, the Ozawa Declaration for the purpose of establishing that the court erred with respect to its finding concerning the solvency of NRVH based on evidence presented at the hearing on the Ad Hoc Committee's original motion, the court gives the Ozawa Declaration little weight because the declaration does not identify what, if any, evidence admitted at the hearing was considered by Mr. Ozawa to formulate an opinion concerning the solvency of NRVH and upon

together with Exhibits "A" through "E" attached to the Request for Judicial Notice in support of its Reconsideration Motion, and suggests that an evidentiary hearing is now necessary concerning the solvency of NRVH.[18]

Reconsideration under Rule 9023 is not intended to give a litigant a "second bite at the apple." See In re Christie, 222 B.R. 64, 67 (Bankr. D.N.J. 1998) (citation omitted); see also Voelkel v. Gen. Motors Corp., 846 F.Supp. 1482, 1483 (D. Kan. 1994), aff'd, 43 F.3d 1484 (10th Cir. 1994) ("A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed."); U.S. v. Carolina E. Chem. Co., 639 F. Supp. 1420, 1423 (D.S.C. 1986) ("A party who failed to prove his strongest case is not entitled to a second opportunity by moving to amend a finding of fact or a conclusion of law."); In re Hillis Motors, Inc., 120 B.R. 556, 557 (Bankr. D. Haw. 1990) (Rule 59 does not "give a disappointed litigant another chance."(citation omitted)). "The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into newly discovered evidence." Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993), cert. denied, 512 U.S. 1236 (1994) (quotation marks and citations omitted); see, e.g., Coastal Transfer Co. v. Toyota Motor

---

which the court may have committed clear error in finding a substantial likelihood that the Debtors – both NRV and NRVH – were insolvent.

[17] The court sustains the Creditors' Committee's objections to the Dunn Declaration on the grounds of hearsay and lack of authentication. Furthermore, Exhibit A to the Dunn Declaration, which purports to be a transcript of the first meeting of creditors held on January 28, 2008, is incomplete on its face and is not relevant in that it is not newly discovered evidence nor evidence which could not have been discovered with reasonable diligence and timely submitted in conjunction with the Ad Hoc Committee's original motion filed on February 4, 2008. The court will, however, take judicial notice of the proceedings held before the court in this case at 10:30 a.m. on February 29, 2008, to the extent relevant to the Ad Hoc Committee's allegation that it was prejudiced by statements made by counsel for the Debtors and Creditors Committee at a status conference on February 29, 2008, and that reconsideration is therefor required to prevent manifest injustice.

[18] Reconsideration Motion, p.8, l.6-8.

-8-

1  Sales, U.S.A., 833 F.2d 208, 212 (9th Cir. 1987) ("Evidence is not 'newly discovered' under the
2  Federal Rules if it was in the moving party's possession at the time of trial or could have been
3  discovered with reasonable diligence."); Brown v. Wright, 588 F.2d 708, 710 (9th Cir. 1978)
4  (stating that a party's desire "to introduce additional evidence after losing the case did not
5  constitute a proper ground for granting a new trial"). The evidence submitted by the Ad Hoc
6  Committee is not "new"[19] evidence concerning the economics of NRVH and NRV, but instead is
7  evidence that the Ad Hoc Committee could have obtained with reasonable diligence and timely
8  submitted to the court in conjunction with its motion for appointment of an official equity
9  security holders' committee on February 4, 2008. The Ad Hoc Committee may not cure its
10 failure to submit this evidence with its motion by submitting it now. Thus, the court declines to
11 reconsider its prior ruling based on the belated declarations and documentary evidence.

C.    Reconsideration is Not Necessary to Prevent Manifest Injustice.

Finally, the Ad Hoc Committee asserts that reconsideration is necessary to prevent a "manifest injustice," arguing that it was prejudiced by statements made by counsel for the Debtors and Creditors' Committee at a status conference on February 29, 2008, after a verdict in the Kemlite Litigation. "[T]here is a strong inference," according to the Ad Hoc Committee, "that the Court relied on the statements from the Debtors and the [Creditors'] Committee at the Status Conference as grounds for denying the Motion . . . ."[20]

"A 'manifest injustice' is defined as 'an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea

---

[19] Rule 59(a) permits the court to grant a new trial based upon newly discovered evidence only if the movant establishes that (a) the evidence was discovered after trial; (b) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage, and (c) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case. Fed. R. Civ. P. 59(a); Defenders of Wildlife v. Bernal, 204 F.3d 920, 929 (9th Cir. 1999); Jones v. Aero/Chem Corp., 921 F.2d 875, 878 (9th Cir. 1990).

[20] Reconsideration Motion, p.19, 1.3-5.

1 agreement that the prosecution rescinds.'" In re Oak Park Calabasas Condominium Ass'n, 302
2 B.R. 682, 683 (Bankr. C.D. Cal. 2003) (citation omitted): see Register v. Cameron & Barkeley
3 Co., 481 F. Supp. 2d 479, 480 n.1 (D.S.C. 2007). Manifest error is "'an error that is plain and
4 indisputable, and that amounts to a complete disregard of the controlling law or the credible
5 evidence in the record.'" Oak Park Calabasas Condominium, 302 B.R. at 683 (citation omitted).
6 The Ad Hoc Committee does not identify any particular remarks by Debtors' counsel at the
7 status conference that it considers offensive or prejudicial. Its claim of manifest injustice rests
8 solely upon statements by Creditors' Committee counsel which the Ad Hoc Committee views as
9 argument advanced "regarding the 'principal issue' on the pending Motion – i.e., the solvency of
10 these cases."[21]

11    On February 29, 2008, the court conducted a status conference at the request of Debtors'
12 counsel at the conclusion of a hearing on an unrelated matter in the jointly-administered cases.
13 At the status conference, the court was advised that a jury had delivered a verdict of $3.5 million
14 in the Kemlite Litigation three days earlier, and that the verdict was substantially less than the
15 $25 million sought by NRV in the case. The Ad Hoc Committee points to the following remarks
16 by Creditors' Committee counsel at the February 29th hearing, which the court has placed in
17 context according to the record, as improper comments regarding the Ad Hoc Committee's
18 motion for appointment of an official committee of equity security holders then under
19 submission:

> MR. RAFATJOO: Your Honor, Mr. Shenson states that the Debtors are distraught over this result. I'm sure they are but at the end of the day they were gambling with the creditors' money and they lost. We were all hoping for a recovery. The committee's opinions and views on certain issues were often marginalized in this courtroom with comments such as we are a debtor in possession.
>
> We have fiduciary duties and we have equity holders to whom we owe things. So we're not going to do it your way committee. <u>I hope that now people can understand that there is no way equity is in the money. This is about the general unsecured creditors and about what can be done to maximize the value of these estates at this point in time for the</u>

---

[21] Id. at p.18, l.2-4.

- 10 -

1    <u>general unsecured creditors, no one else</u>.

2    The committee sat back and there has been professional fees of a million and a half dollars incurred so far in this case. As you heard from Mr. Corn, what is the estate going to net? Nothing. The estate is going to lose money. We pay $2.5 million dollars to O'Melveny pre-petition and somehow they racked up fees of $3,000,000 and $4,000,000 between then and when the verdict came in?

5    We would like to see those bills, your Honor. If they're going to take another million dollars out of this thing, we would like to see the bills of the experts. We want to know what happened here. When the committee gets marginalized, pushed aside, is not allowed to – settlement numbers aren't shared with it, is not allowed to talk to anyone, is not allowed to get involved in this case and is pushed to the side saying you're only out for your own interest.

9    We're trying to do the global good. This is the net result of it, your Honor. They're not willing to listen to anyone. Mr. Petracelli specifically is not allowing anyone's opinion to interject into this process because he knows better. This is the result of it. We're not going to get anything, your Honor. This case that was a 100 cent some plus interest potentially is now a 30 to 40 cent case.

12    We have sent a demand letter to the Debtors requesting certain things and those things relate to the board fees that were sent out on notice, those relate to the management that exists at this company. There's five board members. There's corporate counsel for the board. There's Debtors' general insolvency counsel. There is turn around advisors. There's claims agents. There's IT counsel. There is interim CEO, president, CFO.

15    I don't know if there is – I haven't seen a VP. There's general counsel. There's assistant general counsel. That needs to get trimmed. This is a liquidation at this point. Enough is enough. <u>It's about the general unsecured creditors</u>. The process needs to go by smoothly, very quickly and very efficiently, your Honor. Your Honor, the Debtors have until the end of March I believe to file their plan [and] disclosure statement. We have requested that that happen. We have informed the Debtors that we're going to oppose any extension of exclusivity. The process needs to move forward.

19    This auction is the biggest thing that's left at this point in time. This thing just needs to [be] yanked out of bankruptcy because the bleeding has to stop. The Debtors need to in good faith revisit their staffing, revisit the board issues, the comp issues at the executive and at the board level and figure out if all that is necessary. They need to figure out if all these professionals are necessary because the monthly net in this case, your Honor, is huge.

23    <u>It is unbelievably high how much the administrative expense of this case is</u>. Up to this point in time, I understand. Committee you don't matter. You're going to get paid 100 cents on a dollar. Just sit back and be quiet. Different dynamics, your Honor. <u>This week changed the dynamics of this case</u> and we hope that the Debtors understand

and hear us loud and clear. We need a different approach to this case going forward."[22] Neither the Debtors' counsel nor Creditors' Committee's counsel presented additional argument or evidence at the status conference concerning the Ad Hoc Committee's motion under submission for appointment of an official equity security holders' committee. The transcript of the hearing reveals that neither counsel even mentioned the Ad Hoc Committee's motion nor improperly sought to influence the court's adjudication of the Ad Hoc Committee's motion. Counsel for the Creditors' Committee expressed his frustration at the mounting administrative expenses incurred in the case, and in particular, the attorneys fees and costs incurred in the Kemlite Litigation in light of the benefit derived therefrom. In response to his concerns, the court observed:

> <u>Ten days ago we had a committee in here – ad hoc committee in here saying notwithstanding [the] Kemlite litigation it felt that the Debtor – that equity was in the money. Now it doesn't appear that even the unsecured creditors' committee may be that far into the money. I think he has a point concerning the level of administrative expense up to this point.</u> I certainly wouldn't second guess anything that was done following that litigation from at least what I know at this point.
>
> The litigation is now over. It's a factor that has to be dealt with and this is a liquidation case. The Debtor has moved expeditiously. No question about it from the time this was filed to maximize the value of the assets. I felt that the Kemlite litigation may extend far beyond in time to actually adjudicate than it did. Now we know exactly how much money is going to be coming into the estate. With that in mind, it may very well be time for the Debtor to take steps to look hard at the administrative expenses being incurred."[23]

Based on the foregoing comments, which the court has also placed in context according to the record, the Ad Hoc Committee suggests that the court ignored the evidentiary record of the hearing on February 19, 2008, with respect to the issue of NRVH's solvency, and denied its motion for appointment of an official equity security holders' committee due to the outcome of

---

[22] Reply of the Ad Hoc Committee of Equity Holders to the Official Committee of Unsecured Creditors' Evidentiary Objections to Evidence Submitted in Support of Motion for Reconsideration of Order Denying Appointment of Official Committee of Equity Holders, Exhibit "A," p.19, l.1 to p.21, l.21 (emphasis added).

[23] Id. at p.22, l.18 to p.23, l.11.

the Kemlite Litigation.

In response to the Ad Hoc Committee's original motion, the Debtors and the Creditors Committee argued that equity would not be "in the money" absent a recovery in the Kemlite Litigation.[24] The Ad Hoc Committee disagreed, arguing in its original motion and at the hearing on February 19, 2008, that NRVH was solvent notwithstanding an adverse result in the Kemlite litigation.[25] The court disagreed with the Ad Hoc Committee and found based upon the evidence presented at the hearing on February 19, 2008, "a substantial likelihood that the Debtors [NRVH and NRV] were insolvent."

The court noted in its Memorandum Decision that a verdict was rendered in the Kemlite litigation for the sum of $3.5 million, but its decision not to appoint an official equity security holders' committee in the NRVH case did not turn on this development. As discussed in the Memorandum Decision, the court weighed the issue of solvency with the following other non-exclusive factors to determine whether the appointment of an official committee in the NRVH case was necessary to assure adequate representation of the equity security holders: (1) the size and complexity of the cases; (2) whether the shares are widely held and publicly traded; (3) whether the cost of the additional committee significantly outweighs the concern for adequate representation; and (4) other factors relevant to adequate representation, including whether there was evidence that the Debtors had ignored their fiduciary obligations, as debtors in possession,

---

[24] Debtors' Statement Re Motion of Ad Hoc Committee of Equity Holders for Appointment of Official Committee of Equity Holders, p.2, l.9-12 ("As the Debtors have made clear, in past filings with the Court, whether equity is "in the money" will likely turn on whether (and to what extent) they are successful in the ongoing [Kemlite Litigation]."); Objection of the Official Committee of Unsecured Creditors to Motion of Ad Hoc Committee of Equity Holders for Appointment of an Official Committee of Equity Holders, p.6, l.11-13 ("Absent a large monetary verdict in favor of Debtors in the Kemlite Litigation, an unsuccessful series of appeals by the Kemlite Litigation, there is not a 'substantial likelihood' that the equity interests will receive a monetary distribution.").

[25] Indeed, the Ad Hoc Committee's position has been, and continues to be, that "the verdict in the Kemlite Litigation does not affect whether equity is in the money, but only how much it is in the money. Reconsideration Motion, p.18, l.28 to p.19, l.1-2 (emphasis in original).

to both creditors and equity security holders.

As previously noted, the appointment of an official equity security holders' committee is an extraordinary remedy left to the discretion of the court. The Ad Hoc Committee failed in its burden to establish that the appointment of an official equity security holders' committee was necessary to assure adequate representation. NRVH's solvency was one of five non-dispositive factors considered by the court in finding that the appointment of an official committee under § 1102(a)(2) was not necessary at this time to assure adequate representation of NRVH's equity security holders under the specific facts of this case.

### III. CONCLUSION

The court finds no proper grounds for reconsideration. Although the Ad Hoc Committee disagrees with the court's interpretation of the law, its arguments do not establish the court's prior ruling to be "clearly erroneous." Nor does the Ad Hoc Committee demonstrate clear error which should be corrected to prevent manifest injustice. Accordingly, the Ad Hoc Committee's Reconsideration Motion will be denied.

A separate order will be entered consistent with this opinion.

Dated: April 25, 2008

PETER H. CARROLL
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM:**
*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do not file this form as a separate document.*

| In re NATIONAL R.V. HOLDINGS, INC., a Delaware corporation; and NATIONAL R.V., INC., a California corporation, | CHAPTER 11 |
|---|---|
| Debtor. | CASE NUMBER RS 07-17941 PC |

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
# AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1. You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify)*: MEMORANDUM DECISION

   was entered on *(specify date)* APR 28 2008

2. I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date)*: APR 28 2008

Dated: APR 28 2008

JON D. CERETTO
**Clerk of the Bankruptcy Court**

By: _____
Deputy Clerk

---

*Rev. 1/01* This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.    **F 9021-1.1**

Service List

National R.V. Holdings, Inc.
425 West Rider Street, Unite B4
Perris, CA 92571


Jonathon Shenson
David Guess
Klee, Tuchin, Bogdanoff & Stern, LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067


Timothy J. Farris
United States Trustee
3685 Main Street, Ste. 300
Riverside, CA 92501


Ali M. Mojdehi
Christine E. Baur
Baker & McKenzie, LLP
12544 High Bluff Drive, 3rd Floor
San Diego, CA 92130


Hamid R. Rafatjoo
Pachulski, Stang, Ziehl & Jones, LLP
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA 90067


Marc S. Cohen
Steven F. Werth
Kaye Scholer, LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067